No. 35,011

M. A. PRATHER et ux., *Appellees,* v. THE NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, and WILBUR L. GARDNER, as Trustee, *Appellants.*

(112 P. 2d 99)

Opinion filed April 12, 1941.

*Frederick G. Apt,* of Iola, for the appellants.

*G. E. Pees,* of Iola, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action on a fire-insurance policy. Judgment was for the plaintiff. Defendants appeal.

The petition, after alleging the incorporation of the defendant insurer, alleged that certain defendants were, on March 30, 1938, owners of described real estate and that defendant Lyman was administrator of the Beaver estate; that on March 30, 1938, the defendants, who were heirs of the Beaver estate, entered into a written contract with plaintiffs for the sale to plaintiffs of the real estate mentioned; that on April 7, 1938, defendant insurer, through its agent Tredway, issued a policy of fire insurance on buildings in the amount of $1,600; that this policy was issued at the solicitation of the agent of the insurer, who had known the property for several years, and knew its location and its condition, and that he insisted it be insured for more than the amount for which it had been insured; that through a mistake in the preparation and issuance of the policy of insurance the agent made an error in the description of the property. The petition further alleged that the form of the policy, the name of the insured and the endorsements on it were selected and prepared by the agent with the knowledge of the fact that legal title to the property was in the Beaver heirs and that the Prathers were the purchasers on a contract; that while the policy was in full force, and about May 10, 1938, the dwelling house insured in the policy was totally destroyed and the washhouse was damaged by fire; that the plaintiffs notified the agent of the loss and that insurance was due in the sum of $1,250 on the dwelling house and $10 on the washhouse; that under date of August 13, 1938, the plaintiffs made proof of loss to the insurance company, and on September 14 plaintiffs furnished a schedule of property claimed to be destroyed, but that the company refused to pay the loss under the policy; that the Beaver heirs, without knowledge of plaintiffs and to deprive plaintiffs of their property, made settlement with the insurer on November 25, 1938, and the insurer took from the Beaver heirs a deed for the property in the name of one Gardner as trustee, the state agent for the insurer. Judgment was prayed in the amount of $1,260, with interest, and for an order canceling the deed to Gardner, compelling specific performance of the contract between the Beaver heirs and the Prathers and for interest, including attorney's fee.

The defendant insurer and Gardner, its state agent, admitted the issuance of the policy, and stated that it was issued in reliance on the statements of Prather that he was at that time the sole and unconditional owner of the property except for a mortgage to the Beaver estate; that at the time such representations were made they were

false and known by Prather to be false; that his only interest in the property was the contract of sale; that Prather had not paid any substantial sum toward the purchase of the property except $8 as down payment; that these statements were made by Prather with the intention of securing the policy, well knowing that a correct statement of his interest would not disclose any insurable interest in the property, and that these statements were made with the intention of defrauding the agent and of inducing defendants to accept the risk. The answer quoted a clause of the policy, as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The answer further quoted a clause of the policy, as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple . . ."

The answer then alleged that plaintiffs were not at the time they secured the policy and never had been the unconditional owners and entitled to the real estate; that by reason of their failure to be unconditional owners of the real estate the policy was void and plaintiffs could not recover thereon; that at the time of the issuance of the policy plaintiffs knew of these terms and conditions; that notwithstanding this knowledge they neglected to correct it; that about November 25, 1938, when defendant insurer discovered the fraud practiced upon it by Prather it tendered to Prather the amount of the premium paid and Prather refused to accept it; that defendants had always been willing to return the premium to the plaintiffs. The answer further alleged that the policy provided, among other things, that the insured in the event of loss should provide the insurer with proofs of loss, giving the true and correct title and ownership of claimant; that notwithstanding this requirement the plaintiffs failed to furnish insurer with these proofs, especially the correct and true condition of the ownership; that these correct statements were a prerequisite of the commencement of any action under the terms of the policy. The answer further denied that plaintiffs were at the date of the issuance of the policy, or at the time of the commencement of the action, owners of the property described in the petition;

that on the date of the loss any rights they had on the property had been terminated.

The Beaver heirs answered with a general denial and alleged that the contract between them and the plaintiffs provided that Prather was to pay the sum of $600 for the property, as follows: $8 on the first day of each succeeding month until the total of such monthly payments of $8 each should amount to $200, and for further payment of $100 on certain days until the $600 should be paid, and that the title to the real estate did not pass from them until the terms of the contract were fully performed; that these payments became due and demand was made by defendants because no payments had ever been made since April 1, 1938, and plaintiffs had refused to make more payments. These defendants prayed judgment that plaintiffs take nothing by their suit and that all the interest acquired in the property by the Prathers by virtue of the contract be set aside and their title quieted, and for their costs.

With the issues thus made up the case was tried. At the close of the introduction of defendants' evidence the plaintiffs asked the court for a directed verdict in their favor and against the defendant insurer. This motion was sustained and the jury was directed to return a verdict in favor of the plaintiffs for the sum of $660 with interest in the amount of $42.35. Motion of the insurer for a new trial was overruled. The court allowed plaintiffs an attorney's fee in the amount of $300. Judgment was rendered accordingly. Hence this appeal.

The defendant insurer argues that there was a dispute as to the facts which it had a right to have submitted to the jury and that it was error for the court to instruct the jury to return a verdict for the plaintiffs.

The theory upon which the trial court decided the case, as stated in the brief of the plaintiffs, was that since the defendant recognized the policy was good by the payment to the Beaver heirs, it could not claim it was void as to plaintiff. In other words, the defendant company waived the defense of fraud of the Prathers when it made the payment to the Beaver heirs. Plaintiffs argue that with the situation such as it was the policy might have been written in the name of the Beaver heirs with a loss payable clause to the Prathers or as it was to the Prathers with the Beaver heirs as mortgagees. They argue that the whole thing was a matter of form and that the insurer waived the defense of fraud on the part of the Prathers when it made the payment to the Beaver heirs.

In connection with this argument it should be noted that the policy in this case provided that loss under the policy should be payable to the Beaver estate, mortgagee, as its interest might appear, and that the insurance as to the interest of the mortgagee should not be invalidated by any act of the mortgagor.

This court has held that such a provision constituted a separate contract between insurer and the mortgagee and that the insurer was liable to the mortgagee as to its interest even though it might have a defense against liability on the policy as to the mortgagor. (See *Fuller v. Fire Insurance Co.*, 117 Kan. 282, 231 Pac. 53, also *Metropolitan Life Ins. Co. v. Mennonite Mutual Fire Ins. Co.*, 131 Kan. 628, 293 Pac. 402.) Since that is the rule, the insurer in this case did not waive any defenses it might have had as to its liability to the party who appeared as the mortgagor in the policy. (See 7 Couch on Insurance, 5577, also *Clark v. Casselman*, 177 Cal. 82, 169 Pac. 1005, also *Glaser v. Williamsburg, Etc., Ins. Co.*, 72 Ind. App. 319, 125 N. E. 787.)

Furthermore, this argument is not good for the reason that the action of the company in making this payment did not prejudice the Prathers. They lost no right by relying on that payment. As far as that payment was concerned it might have been made to a stranger. (See *Street Lighting Co. v. City of Wichita*, 101 Kan. 452, 168 Pac. 1090, and cases cited.)

Defendant insurer also argues that judgment should have been entered for it because the record discloses beyond any doubt that the Prathers had less than unconditional ownership of the insured property. This argument is not good for the reason that according to the evidence of the plaintiff all the facts with reference to the ownership of the property were disclosed to the agent of the defendant company and he issued the policy regardless of it. The agent had authority to issue policies and consummate the contract. There is no dispute about that by either party.

In *Insurance Co. v. McCarthy*, 69 Kan. 555, 77 Pac. 90, this court held:

"Where a policy of insurance contained the condition that if the interest of the assured be or become other than the entire, unconditional, unencumbered and sole ownership of the property, the policy should be void unless otherwise provided by agreement endorsed thereon, and such policy was issued by an agent having authority to issue policies of insurance and consummate the contract, and such agent at the time of the issuing of the policy had knowledge of an encumbrance upon the premises, but made no endorsement of it

thereon, it is held that the company waived the condition of the policy." (Syl. ¶ 1.)

(See, also, *Insurance Co. v. Straughan,* 70 Kan. 186, 78 Pac. 447.)

This brings us to a consideration of the disputed question of fact in the case.

The agent of the insurer testified that he did not solicit the insurance and that Prather stated to him that he had purchased the property from the Beaver estate and as part of the purchase price there had been given back a mortgage price; that Prather had stated to him that he had paid for the property a sum greatly in excess of the amount of the mortgage lien, and that at no time was it disclosed to him that the sale was on a contract. The policy contained a provision as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Had the jury believed the evidence of defendant, judgment should have been for the defendant insurance company.

On the other hand, plaintiffs testified that the agent of defendant solicited the insurance; that they at first refused it and later consented to the issuance of a policy for $1,500; that at that time the plaintiffs told the agent they had purchased the property on a contract for a deed; that the form of the policy and all the endorsements was issued by the agent with knowledge of the fact that the legal title to the property was in the Beaver heirs and that the Prathers were purchasers under the contract for a deed from the heirs and to be sure of this the plaintiffs had delivered a copy of the contract of purchase and fully explained to the agent the purchase transaction.

In *Insurance Co. v. Gray,* 43 Kan. 497, 23 Pac. 637, this court held:

"In an application for insurance, where correct answers are given to a general agent of the company respecting encumbrances on the property of the applicant, and such agent fails to mention the encumbrances in the written application, but procures the signature of the applicant, accepts the premium and closes the contract, the company will not be relieved from liability on account of misrepresentations in the application, although it was stipulated therein that it should be considered a part of the policy, and a warranty by the insured of the truth of the statements which it contained." (Syl. ¶ 1.)

See, also, *Insurance Co. v. McCarthy,* supra.

In *Palin v. Insurance Co.*, 92 Kan. 401, 140 Pac. 886, in a case involving similar circumstances, this court said:

"If the agent of the defendant, upon his own motion and without the knowledge or authority of the plaintiff, wrote in the application an untruthful answer to the question 'Is the land described mortgaged' the policy was not avoided because the land was mortgaged." (p. 403.)

See, also, *Union Central Life Insurance Co. v. Zehr*, 143 Kan. 910, 57 P. 2d 51.

The evidence of the plaintiff in this action brought it within this rule.

It was error for the trial court to refuse to submit the issues made up by the pleadings to the jury under proper instructions.

The judgment of the trial court is reversed, with directions to grant defendant a new trial in accordance with the views expressed herein.